AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br><br>Information associated with the Cellular Device Assigned<br>Call Number (513) 816-4927 That is Stored at Premises<br>Controlled by Sprint Corporation | )<br>)<br>)<br>)<br>)<br>) |

Case No.   1:20-mj-623

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Eric J. McIntosh, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.
 (via FaceTime video)

Date:   8/19/2020

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(513) 816-4927** ("**TARGET PHONE 2**"), whose service provider is Sprint Corporation, a wireless communications service provider that is headquartered at 6480 Sprint Parkway, Overland Park, Kansas, 66251.

## ATTACHMENT B

### Particular Things to be Seized

#### I. Information to be disclosed by Sprint Corporation

To the extent that the information described in Attachment A is within the possession, custody, or control of Sprint Corporation, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Sprint Corporation or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Sprint Corporation is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All voice mail, text, and multimedia messages from to **FEBRUARY 1, 2020 to PRESENT** stored and presently contained in, or on behalf of the account or identifier;

b. All existing printouts from original storage of all of the text messages described above;

c. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from **FEBRUARY 1, 2020 to PRESENT**;

d. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message **FEBRUARY 1, 2020 to PRESENT**;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device

associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

      f.     Detailed billing records, showing all billable calls including outgoing digits, from **FEBRUARY 1, 2020 to PRESENT**;

      g.     All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from **FEBRUARY 1, 2020 to PRESENT**;

      h.     Incoming and outgoing telephone numbers, from **FEBRUARY 1, 2020 to PRESENT**;

      i.     All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

      j.     All records pertaining to communications between **Sprint Corporation** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

2

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of possession with intent to distribute narcotics and conspiracy to distribute narcotics (Title 21, U.S.C., Secs. 841(a)(1), 846) involving DAVIS since approximately February 2020, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      Evidence indicating how and when the cellular device was used to facilitate the purchase, sale, and distribution of narcotics and the movement of narcotics proceeds.

b.      Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

d.      Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(513) 816-4927** | Case No. __1:20-mj-623__ |
| THAT IS STORED AT PREMISES CONTROLLED BY **SPRINT CORPORATION** | **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Eric J. McIntosh, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with call number **(513) 816-4927** ("**TARGET PHONE 2**"), with no listed subscriber(s), that is in the custody or control of Sprint Corporation, a wireless communications service provider that is headquartered at 6480 Sprint Parkway, Overland Park, Kansas, 66251.  As a provider of wireless communications service, Sprint Corporation is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Sprint Corporation to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.     I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since August of 2003.  My primary duties as a Special Agent consist of investigating criminal enterprises, narcotics investigations, organized crime, and violent crimes to include

unlawful possession and possession with the intent to distribute controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841, 843, and 846. I am familiar with federal firearms laws, and investigations into possession of a firearm by a convicted felon, possessing a firearm in furtherance of a drug trafficking crime and the associated violations of Title 18, United States Code, Sections 922 and 924. As part of my standard training to become a FBI Special Agent, I have received specialized training in the means and methods by which individuals and criminal enterprises conduct their illegal activities, as well as in the use of various investigative techniques used to uncover unlawful activities. Based upon my experience and training, I am familiar with the ways in which drug traffickers conduct their unlawful drug trafficking activity, including, but not limited to, their use of code words and numbers to conduct their transactions, their use of multiple telephones to conduct their illegal activities, their methods for concealing narcotics and narcotics proceeds and their use of firearms, violence, and threats of violence to protect their criminal organization. I have received further specialized training concerning the interception of wire communications.

3. I have participated in various types of electronic surveillance, including the interception of wire communications, in investigations of drug traffickers, money launderers, and violent criminal enterprises. I am also familiar with, and have personally participated in, other normal methods of investigating criminal enterprises, including, but not limited to, visual surveillance, the questioning of witnesses, the use of informants, undercover operations, the use of pen registers, including pen registers in the form of digital analyzers.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, in violation of Title 21, U.S.C. §§ 841(a)(1) and 846 are being committed by JAMES ANTHONY DAVIS (hereinafter "DAVIS"). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

6.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i); and is in a district in which Sprint Corporation is located or in which the items described in Attachment A are stored, *see* 18 U.S.C. § 2711(3)(A)(ii).

## PROBABLE CAUSE

7.      The United States, including the FBI, is conducting a criminal investigation of DAVIS and other co-conspirators, both known and yet unknown, regarding possible violation(s) of possession with intent to distribute narcotics and conspiracy to distribute narcotics (Title 21, U.S.C., Secs. 841(a)(1), 846) and money laundering and conspiracy to commit money laundering (Title 18, U.S.C., Sec. 1956) (collectively referred to as the **Subject Offenses**).

### Background of the Investigation

8.      The FBI San Diego Field Office is investigating a sophisticated poly-drug distribution and money-laundering network led by SUBJECT 1. From approximately 2017 to the present, SUBJECT 1 and SUBJECT 2 have used misappropriated FedEx Airbills to

3

surreptitiously ship hundreds of packages containing multi-kilogram quantities of controlled substances to customers throughout the United States.

9.     During the investigation, agents worked closely with FedEx Security and law enforcement counterparts throughout the United States to track and seize multiple FedEx parcels containing cocaine and fentanyl shipped by SUBJECT 1 and SUBJECT 2.  To date, FBI San Diego has seized packages containing a total of approximately 20 kilograms of cocaine and 4 kilograms of fentanyl.  FedEx records reveal this criminal network is responsible for shipping approximately 240 packages from 2017-2019, which could translate into hundreds of kilograms of cocaine and fentanyl.

## Surveillance of San Diego Based Targets of Investigation

10.     On February 20, 2020, FBI San Diego conducted surveillance of SUBJECT 1 and SUBJECT 2 as they traveled to a residence and placed two parcels inside the trunk of SUBJECT 2's vehicle.  Agents then followed SUBJECT 2 to the FedEx Office located at 3462 Murphy Canyon Road, San Diego, California.  SUBJECT 2 parked, exited his vehicle, and accessed the trunk to carry two parcels into the FedEx office.  Agents confirmed with FedEx Security that SUBJECT 2 dropped off two parcels at the FedEx Murphy Canyon Office location.  The two packages had FedEx Airbills addressed to the following locations; Kevin Mayfield, 1216 Bates Ave, Cincinnati, Ohio and Joanne Fergusen, 5408 Laconia Avenue, Cincinnati, Ohio.

## February 24, 2020 – FedEx Delivery to 5408 Laconia Avenue and Identification of 5214 Laconia Avenue

11.     On February 24, 2020, FBI Cincinnati agents conducted simultaneous surveillance at 1216 Bates Ave, Cincinnati, Ohio and 5408 Laconia Avenue, Cincinnati, Ohio. At approximately 8:25 AM, agents observed a Federal Express delivery person place a package on the front porch of 5408 Laconia Avenue.  At approximately 8:36 AM, a red Toyota Corolla

4

bearing Ohio license plate HLL1330 driven by a black male, later identified as DAVIS, drove down Laconia Avenue, stopping to ask a surveillance officer a question (the surveillance officer was plain clothed and parked on the street in an unmarked vehicle). Training and experience of your affiant recognizes that subjects asking a person for directions is a common tactic used by individuals in an attempt to detect law enforcement surveillance. The Toyota Corolla continued down Laconia Avenue and pulled in front of 5408 Laconia Avenue, stopping in the middle of the street. Agents observed DAVIS exit the Toyota Corolla, look around the area, then get back into the car and depart the area. Agents also noted DAVIS' Ohio driver's license lists an address of 5407 Laconia Avenue, located directly across the street from 5408 Laconia Avenue. In your affiant's experience, it is not uncommon for drug traffickers to have drug deliveries made to abandoned homes or properties of unwitting individuals in an area they are familiar with and can observe in an effort to detect whether law enforcement is involved in surveilling the package.

12. At approximately 8:36 AM, A blue Mercury Mariner bearing Ohio license plate DKX3287 (registered to George R. Winkfield, 5408 Laconia Avenue, Cincinnati, Ohio) backed into the driveway of 5408 Laconia Avenue. A black male, later identified as DOMINIQUE L. TUCKER (hereinafter "TUCKER"), exited the car, retrieved the package from the front porch, placed the package in the front passenger seat of the Mercury Mariner, and departed the area. The car traveled down Laconia Avenue approximately one block, turned east on Portman Avenue, then turned north into a rear alley, parking in the back area of a residence located at 5214 Laconia Avenue. TUCKER was then observed walking along the side of 5214 Laconia Avenue, carrying the package, walking toward the front door of the residence.

**February 24, 2020 – FedEx Delivery to 1216 Bates Avenue and**
**Seizure of Two Kilograms of Fentanyl**

13.     At approximately 8:51 AM, surveillance agents at 1216 Bates Avenue, Cincinnati, Ohio, observed DAVIS driving the red Toyota Corolla past 1216 Bates Avenue.  At approximately 8:53 AM, agents observed a FedEx delivery person place a package on the front porch of 1216 Bates Avenue.  Agents and officers continued to observe the subject in the red Toyota Corolla driving around the area of 1216 Bates Avenue in a manner consistent with individuals attempting to detect law enforcement surveillance.

14.     At approximately 10:16 AM, a black male, later identified as KEATON WAYNE TAYLOR, II (hereinafter "TAYLOR"), exited 1216 Bates Avenue, picked up the package on the porch, got into a grey Nissan Altima bearing Ohio license plate FKH1032 and departed the area.

15.     At approximately 10:17 AM, a marked Cincinnati Police Department unit conducted a traffic stop of the grey Nissan bearing Ohio license plate FKH1032 for failure to stop at a stop sign.  A K9 "sniff" of the vehicle was conducted and the K9 alerted to the presence of narcotics in the car.  Officers conducted a probable cause search of the vehicle, located the package, and found the package to contain a large brick shaped object, wrapped in cellophane. Officers identified the driver as TAYLOR who was transported to Cincinnati Police Department where he was processed and charged locally.  The large brick shaped object was seized by Cincinnati Police Department and determined to contain approximately 2 kilograms of fentanyl, as verified by the Hamilton County Crime Lab.  While the traffic stop was being conducted, surveillance agents observed DAVIS driving the red Toyota Corolla erratically in the area of the traffic stop.  DAVIS was eventually observed getting on a major thoroughfare and departed the area, not followed by surveillance.

6

16. At approximately 10:45 AM, agents who had maintained surveillance at 5214 Laconia Avenue (the residence in which the first FedEx package was taken) observed DAVIS driving the red Toyota Corolla in and around the area. DAVIS began following a surveillance agent, as the agent attempted to depart the area of 5214 Laconia Avenue. DAVIS made several turns with the surveillance agent and pulled next to the agent at a red traffic light in an attempt to observe the identity of the person driving the surveillance vehicle. Training and experience of your affiant recognized DAVIS' actions as consistent with those used by individuals to attempt to detect law enforcement surveillance.

17. On March 5, 2020, FBI San Diego executed a federal search warrant at a residence of SUBJECT 1. During the search, agents located a FedEx Airbill for the package that SUBJECT 2 had mailed on February 20, 2020 and law enforcement seized from TAYLOR during the traffic stop in Cincinnati, Ohio on February 24, 2020.

**Identification of JAMES DAVIS and Further Evidence DAVIS is Involved in Drug Dealing**

18. Agents compared the black male observed during surveillance on February 24, 2020, driving the red Toyota Corolla, with an Ohio driver's license photograph of James Anthony DAVIS, date of birth XX/XX/1980, and determined them to be one and the same.

19. The officer whom DAVIS asked for directions on the morning of February 24, 2020, immediately before to the 5408 Laconia Avenue package delivery and pickup, compared surveillance photographs with an Ohio driver's license photograph of James Anthony DAVIS, date of birth XX/XX/1980, and determined them to be one and the same.

20. Further, the Cincinnati Police Department has had prior contact with DAVIS driving the red Toyota Corolla bearing Ohio license place HLL1330.

21.    DAVIS' criminal history involves seventeen misdemeanor arrests, twelve misdemeanor convictions, nine of which involve drugs.  DAVIS has been the subject of eight felony arrests, two of which resulted in felony convictions.   On September 23, 2003, DAVIS was convicted of aggravated robbery with a firearm and sentenced to three years in prison.  On December 27, 2010, DAVIS was convicted of possession of cocaine and sentenced to three years of probation.

22.    In August 2020, Agents and officers developed a confidential informant (hereinafter "CI-1") with firsthand knowledge of DAVIS' drug trafficking operation.  CI-1 has provided information to officers that has proven to be reliable and truthful.  CI-1 is cooperating with law enforcement due to pending state of Ohio criminal charges as well as his/her involvement in the ongoing federal investigation.  Although no promises have been made to CI-1, CI-1 is motivated to cooperate with law enforcement in hopes of consideration during the prosecution of his/her state of Ohio criminal case and any future federal charges.

23.    CI-1 knows DAVIS to be a major drug source of supply in the Cincinnati area for several years.  According to CI-1, DAVIS is "running the FedEx game" and was the true owner of the package containing two kilograms of fentanyl that was delivered to 1216 Bates Avenue and package delivered to 5408 Laconia Avenue on February 24, 2020.  CI-1 indicated TUCKER and TAYLOR work for DAVIS and were directed to pick up the FedEx packages by DAVIS.  According to CI-1, the package delivered to 5408 Laconia Avenue on February 24, 2020, contained kilograms of cocaine and TUCKER was paid five hundred dollars by DAVIS to provide the address and pick the package up.  5408 Laconia Avenue is the residence of TUCKER's father and is located directly across the street from DAVIS' family's home at 5407 Laconia Avenue.

24.     According to CI-1, DAVIS has contact individuals residing on Laconia Avenue on multiple occasions to "hold" kilogram quantities of cocaine because DAVIS feared law enforcement surveillance was following him. CI-1 stated DAVIS is known to frequently change the car he drives in an effort to evade law enforcement detection. According to CI-1, DAVIS is currently using (513) 545-7169 (**TARGET PHONE 1**) and has used **TARGET PHONE 2** in the past. In August 2020, CI-1 encountered DAVIS in the area of Laconia Avenue and DAVIS indicated he was looking for customers to purchase methamphetamine. CI-1 sent a text message to TARGET PHONE 1 indicating he/she knew an individual that would be interested in purchasing two ounces of methamphetamine from DAVIS.

25.     According to a review of Sprint Corporation account details for TARGET PHONE 1, the subscriber data lists Mike Jones, 7014 Vine Street, Cincinnati, Ohio, and no subscriber data is listed for **TARGET PHONE 2**. 7014 Vine Street, Cincinnati, Ohio is the address for a Boost Mobile cellular phone store in Cincinnati, Ohio. Drug traffickers often use fictitious names or names of their associates as their phone subscribers in an effort to evade law enforcement detection. The apparently-fictitious subscription, and the facts learned to-date in this investigation and set forth herein, lead me to believe that the TARGET PHONE 1 and **TARGET PHONE 2** are being used to facilitate illegal narcotics trafficking in violation of Title 21 of the United States Code. Your Affiant believes it is DAVIS using the both TARGET PHONE 1 and **TARGET PHONE 2**.

26.     Toll analysis of Sprint Corporation account details for TARGET PHONE 1 and **TARGET PHONE 2** show both telephones to be actively used with text messaging and/or voice calling data stored with the Sprint Corporation. Toll records for TARGET PHONE 1 show current active contact between the target phone and numerous local and out of state

telephone numbers with voice calls and text messaging. Toll records for **TARGET PHONE 2** show current active contact with only incoming text messages, mainly from one Phoenix, Arizona, area code telephone number. Training and experience of your affiant has shown drug traffickers often maintain separate cellular telephones for communication with narcotics customers and communication with narcotics suppliers, with one-way text messaging, like that seen on **TARGET PHONE 2**, indicative of possible communication with a narcotics source of supply. In August 2020, a preservation letter was served on Sprint Corporation for TARGET PHONE 1 and **TARGET PHONE 2**.

27. In my training and experience, I have learned that Sprint Corporation is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for Sprint Corporation subscribers may be located on the computers of Sprint Corporation. Further, I am aware that computers located at Sprint Corporation contain information and other stored electronic communications belonging to unrelated third parties.

28. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Sprint Corporation for weeks or months.

29. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or

"Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Sprint Corporation for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

30.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long-distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

31.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile

11

Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

32.     Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

33.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

34.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such

communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

35.     As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For

example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Sprint Corporation to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

37.     Based on the forgoing, I request that the Court issue the proposed search warrant.

38.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

39.     The government will execute this warrant by serving the warrant on Sprint Corporation.  Because the warrant will be served on Sprint Corporation, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

40.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Eric J. McIntosh
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this  19  day of August 2020:

Honorable Karen L. Litkovitz
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(513) 816-4927** ("**TARGET PHONE 2**"), whose service provider is Sprint Corporation, a wireless communications service provider that is headquartered at 6480 Sprint Parkway, Overland Park, Kansas, 66251.

## ATTACHMENT B

### Particular Things to be Seized

### I.  Information to be disclosed by Sprint Corporation

To the extent that the information described in Attachment A is within the possession, custody, or control of Sprint Corporation, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Sprint Corporation or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Sprint Corporation is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages from to **FEBRUARY 1, 2020 to PRESENT** stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from **FEBRUARY 1, 2020 to PRESENT**;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message **FEBRUARY 1, 2020 to PRESENT**;

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device

associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

       f.     Detailed billing records, showing all billable calls including outgoing digits, from **FEBRUARY 1, 2020 to PRESENT**;

       g.     All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from **FEBRUARY 1, 2020 to PRESENT**;

       h.     Incoming and outgoing telephone numbers, from **FEBRUARY 1, 2020 to PRESENT**;

       i.     All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

       j.     All records pertaining to communications between **Sprint Corporation** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

2

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of possession with intent to distribute narcotics and conspiracy to distribute narcotics (Title 21, U.S.C., Secs. 841(a)(1), 846) involving DAVIS since approximately February 2020, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      Evidence indicating how and when the cellular device was used to facilitate the purchase, sale, and distribution of narcotics and the movement of narcotics proceeds.

b.      Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

d.      Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3